# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

KRISTEN H.[1] ,

        Plaintiff,

   v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

Civil Action 3:23-cv-199
Judge Michael J. Newman
Magistrate Judge Chelsey M. Vascura

## ORDER and REPORT AND RECOMMENDATION

Plaintiff, Kristen H., brings this action under 42 U.S.C. § 405(g) for review of a final

decision of the Commissioner of Social Security ("Commissioner") denying her applications for

Social Security Period of Disability Benefits, Disability Insurance Benefits ("DIB") and

Supplemental Security Income Benefits ("SSI"). This matter is before the undersigned for a

Report and Recommendation ("R&R") on Plaintiff's Statement of Errors ("SOE") (ECF No. 7),

the Commissioner's Memorandum in Opposition (ECF No. 8), Plaintiff's Reply to Defendant's

Memorandum in Opposition (ECF No. 9),[2] and the administrative record (ECF No. 6). For the

---

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment, or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

[2] Plaintiff objects to the Commissioner's Memorandum in Opposition because it is 24 pages in length. (Pl's Reply, 4, ECF No. 9.) Southern District of Ohio Local Rule 7.2(a)(3) limits the length of memoranda to 20 pages unless counsel includes certain front-matter to aid the reader in digesting longer materials. Because the Commissioner's additional four pages does not impair the Court's ability to digest the Commissioner's arguments, it does not strike or refuse to consider the Commissioner's filing. But note: although the Court allows the memorandum this instance, counsel is fully expected to adhere to the Local Rules.

reasons that follow, the undersigned **RECOMMENDS** that the Court **AFFIRM** the Commissioner of Social Security's non-disability determination and **OVERRULE** Plaintiff's Statement of Errors.

## I.    BACKGROUND

Plaintiff protectively filed her DIB and SSI applications on May 23, 2018, alleging that she became disabled beginning July 4, 2017. Plaintiff's claims were denied initially and on reconsideration, and, following a hearing on July 1, 2019, an Administrative Law Judge ("ALJ") issued an unfavorable determination on September 17, 2019. (R. 23–44.) Plaintiff filed suit in this Court for review of that decision, and on November 8, 2021, the Court remanded Plaintiff's applications under sentence four of 42 U.S.C. § 405(g). On remand, the same ALJ held a telephone hearing on June 29, 2022, at which the Plaintiff, who was represented by counsel, testified. A vocational expert ("VE") also appeared and testified. On September 19, 2022, the ALJ again issued an unfavorable determination (R. 1032–59), and it became final on May 18, 2023, when the Appeals Council declined review. (R. 1022-28.)

Plaintiff seeks judicial review of that second unfavorable determination. She contends that the ALJ committed reversible error when assessing opinions from her mental health providers, Donald J. Amos, MS, PCC, and Yui-Cung Chan, MD, and prior administrative findings from state agency reviewer, Mary K. Hill, MD. (Pl.'s SOE 5–10, ECF No. 7.) Plaintiff also generally contends that the ALJ erred when conducting a subjective symptom assessment. (*Id*.) The Commissioner correctly asserts that Plaintiff's contentions of error lack merit. (Df.'s Memo. in Opp., 2–23, ECF No. 8.)

## II.    THE ALJ's DECISION

The ALJ issued his decision on September 19, 2022. The ALJ determined that Plaintiff

met the insured status requirements of the Social Security Act through March 31, 2024, (R.

1035), and that Plaintiff had not been disabled within the meaning of the Social Security Act

from the alleged onset date of July 4, 2017, through the date of the decision. (*Id.* at 1032–59.) At

step one of the sequential evaluation process,[3] the ALJ found that Plaintiff had not engaged in

substantial gainful activity since the alleged onset date. (*Id.* at 1035–36.) At step two, the ALJ

found that Plaintiff had the following severe impairments: heart disease with high blood

pressure, asthma, kidney stones, thyroid disease, Sjorgren's syndrome, anxiety, depression, and

PTSD (*Id.* at 1036.) At step three, the ALJ found that Plaintiff did not have an impairment or

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §§ 404.1520(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

combination of impairments that met or medically equaled one of the listed impairments

described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 1037-39.)

The ALJ then set forth Plaintiff's residual functional capacity ("RFC")[4] as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations . . . . The claimant is able to perform routine tasks but not at a production rate pace and without strict performance quotas. The claimant is limited to occasional, superficial contact with supervisors and coworkers with "superficial contact" defined as retaining the ability to receive simple instructions, ask simple questions, and receive performance appraisals but as lacking the ability to engage in more complex social interactions such as persuading other people or rendering advice. She is limited to no interaction with the general public, and she is further limited to no jobs involving teamwork or tandem tasks. The claimant is able to tolerate occasional changes to a routine work setting defined as one to two per week.

(*Id.* at 1040.)[5]

At step four, the ALJ determined that Plaintiff was unable to perform her past relevant

work as a nurse aide, waitress, title clerk, cashier, store assistant manager, or therapy assistant.

(*Id.* at 1057.) At step five, the ALJ, relying on testimony from a VE, found that considering

Plaintiff's age, education, work experience, and residual functional capacity, jobs existed in

significant numbers in the national economy that Plaintiff could perform, including such

representative occupations as hotel housekeeping, merchandise marker, and routing clerk. (*Id.* at

1058.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security

Act, from July 4, 2017, the alleged onset date, through the date of the decision. (*Id.* at 1059.)

---

[4] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).

[5] Because Plaintiff's contentions of error pertain to her mental health impairments, the undersigned's discussion is limited to the same.

4

### III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . .."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

### IV. ANALYSIS

As previously explained, Plaintiff contends that the ALJ erred when assessing medical opinions and prior administrative findings and when conducting a subjective symptom

assessment. (Pl's SOE 5–10, ECF No. 7.) The undersigned considers these contentions of error in turn and concludes that they all lack merit.

**A.      The ALJ's Assessment of Medical Opinions and Prior Administrative Findings**

Plaintiff contends that the ALJ erred when assessing medical opinions from two of her mental health treatment providers. Plaintiff additionally contends that the ALJ erred when he "substituted' his judgment for that of a state agency reviewer. (*Id*. at 9.) These contentions lack merit.

**1.      Regulations Governing the Assessment of Medical Opinions and Prior Administrative Findings**

An ALJ's RFC determination must be "based on all the relevant evidence" in a claimant's case record. §§ 404.1545(a)(1); 416.945(a)(1). The governing regulations[6] describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5). An ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must use the following factors when considering medical opinions: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program s policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

---

[6] Because Plaintiff's applications were filed in 2018, they are subject to regulations that govern applications filed after March 27, 2017.

Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. *Id.* And although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so. *Id.* Instead, when an ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . ." §§ 404.1520c(b)(3); 416.920c(b)(3).

2. **Opinions From Plaintiff's Treating Therapist, Mr. Amos**

Plaintiff asserts that the ALJ discounted opinions from her providers, including her therapist Mr. Amos, because she "generally presented with adequate mental health functioning." (Pl.'s Statement of Errors 5–8, ECF No. 7.) Plaintiff further asserts that the record so belies that stated reason for discounting her providers' opinions, the ALJ erred when evaluating the medical record. (*Id.*) These assertions lack merit.

Here, the ALJ described all of Mr. Amos' opinions and provided a variety of reasons for discrediting them. (R. at 1055–56.) The ALJ began by assessing Mr. Amos' August 2017 opinion. The ALJ wrote as follows:

> In August 2017, Mr. Amos, who had only recently started treating the claimant at that time, wrote a letter to the Clark County Unemployment Office (Exhibit 21F). He reported that the claimant was discharged from her inpatient stay with no restrictions (Exhibit 21F/1). However, while improvement was noted, the record continued to demonstrate mental impairments requiring some restrictions in the residual functional capacity (Exhibits 1F-31F).

(*Id.* at 1055.)

As this discussion demonstrates, the ALJ noted that as of August 2017, Mr. Amos had only recently begun treating Plaintiff. (R. at 697, 989.) A treatment provider's relationship with a claimant is one of the five factors an ALJ must consider when assessing medical opinion

evidence. §§ 404.1520c(c)(3); 416.920c(c)(3). In addition, the ALJ explained that although Mr.

Amos wrote that Plaintiff had been discharged from an inpatient stay without restrictions, the

record showed that she indeed had restrictions because of her mental health status. (*Id.*)

Accordingly, it appears that the ALJ *discounted* Mr. Amos' August 2017 opinion. Plaintiff

cannot credibly complain that the ALJ erred by doing so. *Putnam v. Comm'r of Soc. Sec.*, No.

2:20-CV-3895, 2021 WL 2700330, at *5 (S.D. Ohio July 1, 2021) (explaining that "[a]n ALJ

does not commit reversible error when discounting a medical opinion or an administrative

finding because the ALJ determines that a claimant is more limited than opined.")

     The ALJ next assessed Mr. Amos' August and December 2018 opinions. (*Id.*) The ALJ

wrote as follows:

> Mr. Amos completed activities of daily living forms in August and December 2018
> that reflects social difficulties, concentration problems, and a history of not showing
> up to work due to anxiety, but the vast majority of that form appears to be based
> upon the claimant's subjective reports as opposed to his own observations (Exhibits
> 10F and 13F). The forms suggest limitations but do not reflect the extent of those
> limitations or place them in vocationally relevant terms for purposes of formulating
> a residual functional capacity (Exhibits 10F and 13F).

(R. at 1055.)

     As this discussion demonstrates, the ALJ correctly explained that these opinions lacked

sufficient support because they appeared to be based on Plaintiff's subjective reports as opposed

to Mr. Amos' own observations. (*Id.*) (R. at 684-85, 697-99 – this is an opinion treating

psychiatrist Dr. Chan Yiu-Chung, in the same office as Mr. Amos.) Moreover, the ALJ

correctly noted that although Mr. Amos suggested that limits might be warranted, Mr. Amos

failed to include in his opinion any functional limits that could be incorporated into Plaintiff's

RFC. (*Id.*) Both considerations were appropriate. *See Smith v. Kijakazi*, No. 3:21-CV-02310-

JRK, 2023 WL 2973064, at *13 (N.D. Ohio Mar. 13, 2023), (finding that "[t]he fact that

[treatment providers] provided conclusory opinions with no functional analysis or objective

support bears directly on whether their opinions were supportable, and [the] ALJ was entitled to

discount those opinions given the lack of evidentiary support"), *adopted and aff'd*, 2023 WL

2704161 (N.D. Ohio Mar. 30, 2023); *Lyons v. Kijakazi*, No. 1:20-cv-1567, 2022 WL 1064070, at

*7 (N.D. Ohio Jan. 10, 2022) (finding that ALJ properly discounted medical opinion where

treating physician "offers no supporting explanation in her opinion, nor does the doctor identify

objective medical evidence to support the limitations assessed"), *adopted and aff'd,* 2022 WL

610762 (N.D. Ohio Mar. 1, 2022).

> The ALJ additionally assessed Mr. Amos' December 2018 opinion, writing as follows:

> In a December 2018 letter, Mr. Amos opined the claimant should be considered
> work disabled because of her major depression, and she should be considered
> unemployable for a minimum of six months (Exhibit 21F/3). This letter addresses
> an issue reserved to the Commissioner and does not explain Mr. Amos' reasons for
> opining the claimant was disabled (Exhibit 21F). It also does not provide a
> functional analysis of the claimant's abilities (Exhibit 21F/3).

(R. at 1055.)

> As this discussion demonstrates, the ALJ explained that he did not credit this opinion for

three reasons. (*Id*.) First, the ALJ accurately indicated that Mr. Amos' statement that Plaintiff

was disabled constituted a statement about an issue reserve for the Commissioner, and that as a

result, it could be discounted. (*Id*.) And indeed—the governing regulations provide that "the

issue of whether a claimant is disabled or unable to work is reserved to the Commissioner," and

that such statements are "inherently neither valuable nor persuasive."  20 C.F.R. §§

404.1520b(c)(3)(i); 404.1520b(c); 416.1920b(c)(3)(i); 416.1920b(c). In addition, the ALJ

accurately indicated that Mr. Amos' statement lacked sufficient support because he failed to

explain why he opined that Plaintiff was disabled and did not include any concrete functional

limits in this document. (R. at 991.) Again, those considerations were appropriate. *Smith,* 2023 WL 2973064, at *13; *Lyons*, 2022 WL 1064070, at *7.

The ALJ then assessed Mr. Amos' January 2019 opinion as follows:

> In January 2019, Mr. Amos opined the claimant was unable to remember work locations or procedures, carry out instructions, maintain attention or concentration, perform activities within a schedule, sustain an ordinary routine, or interact with the general public (Exhibit 20F/3). He declined to release the claimant for any employment or training (Exhibit 20F/3). No explanation was provided for such opinions (Exhibit 20F/3).

(R. at 1055.)

As this explanation demonstrates, the ALJ explained that the January 2019 opinion lacked sufficient support because Mr. Amos offered no explanation for his opined limits. (*Id.*) Substantial evidence supports that explanation—Mr. Amos did not cite any or findings that supported his opinion in this checkbox form. (R. at 954.) Again, that consideration was appropriate. *Smith,* 2023 WL 2973064, at *13; *Lyons*, 2022 WL 1064070, at *7.

Last, the ALJ assessed Mr. Amos' June 2022 opinion, writing as follows:

> In June 2022, Mr. Amos opined the claimant would be off-task twenty percent or more of the time and would be absent more than three times per month (Exhibit 30F/1-2). In a checkbox form, Mr. Amos opined the claimant generally had moderate to extreme limitations in factors related to the "paragraph B" criteria and a mental residual functional capacity (Exhibits 30F/2). He concluded that the claimant had marked to extreme limitations in the "paragraph B" criteria (Exhibit 30F). No explanation was provided with the exception of checking off symptoms, some of which rarely, if ever, are present in his treatment notes or anywhere else in her medical records, such as the checked symptom of poor memory (Exhibit 30F).

(*Id*. at 1055–56.)

As this discussion demonstrates, the ALJ noted that Mr. Amos' June 2022 opinion was set forth on a check box form that lacked adequate explanations for the identified limits. (R. at 1826–29.) It is well settled that such forms constitute weak evidence at best. *Renee M. v. Comm'r of Soc. Sec.*, No. 3:23-CV-34, 2024 WL 1343582, at *3 (S.D. Ohio Mar. 29, 2024)

(collecting cases) (explaining that in the absence of explanatory support or reference to objective findings, courts routinely find that conclusory check box forms lack supportability). The ALJ explained that although Mr. Amos opined that Plaintiff had moderate to extreme or marked to extreme limits in the "paragraph B criteria," Mr. Amos failed to explain how he reached those conclusions aside from checking boxing indicating the presence of some symptoms, including poor memory, that appeared rarely, if at all, in the record. (R. at 1056.) Substantial evidence supports that explanation. Although Plaintiff specifically identifies an instance where she was found to have impaired recent and remote memory, she fails to specifically point to other record evidence of that symptom. (Pl.'s Statement of Errors 7, ECF No. 7.) Further, and as the ALJ noted elsewhere in his determination, the medical record cited by Plaintiff indicates that she had impaired memory in July 2019, when she reported to the emergency room and tested positive for elevated ethanol levels and marijuana. (R. at 996, 999-1000.) Moreover, and as the ALJ also explained elsewhere, the record contains evidence that Plaintiff's memory was sometimes found to be intact. (*See*, *e.g.*, R. at 1049, citing to R. at 832-33.)

Finally, the ALJ explained that all the preclusive limits opined by Mr. Amos' opinions lacked support and consistency. (R. at 1056.) The ALJ wrote as follows:

> Furthermore, the opinions of Mr. Amos are generally not supported by the claimant's mental status examinations or reported activities throughout the record (Exhibits 1F-31F). Though the claimant often reports significant subjective complaints, she generally presents with adequate mental functioning despite some mood and affect abnormalities that are not consistent with the extensive, work preclusive limitations opined by Mr. Amos (e.g. Exhibits 1F, 18F, and 28F). She occasionally demonstrated some insight and judgment limitations, though it was often described as "good," and was generally noted to have intact recent and remote memory, normal fund of knowledge, focused concentration and concentration, and normal associations with no abnormal or psychotic thoughts, though she did have some circumstantial thought processes on some occasions (e.g. Exhibits 1F, 18F, and 28F). Activities of daily living, such as advocating for her developmentally disabled children, coaching teams, caring for ailing grandparents, and attending to chores, also demonstrates significantly better functioning than opined (Exhibits 1F-

> 31F). As such, while the record supports some mental restrictions, the record is not consistent with limitations as extensive as those opined by Mr. Amos. Therefore, the undersigned only finds the opinions of Mr. Amos somewhat persuasive.

(*Id*.) As this discussion demonstrates, the ALJ indicated that Mr. Amos' preclusive limits were not supported by, or consistent with, mental status examination findings and Plaintiff's activities of daily living. (*Id*.) Substantial evidence supports both of those explanations.

The ALJ initially discussed why Mr. Amos' limits were unsupported by and inconsistent with Plaintiff's mental status examinations. (*Id*.) The ALJ noted that despite subjective complaints and some mood and affect abnormalities, Plaintiff generally presented with adequate mental functioning that was inconsistent with the extreme limits opined by Mr. Amos. (*Id*.) The ALJ noted, for example, that even though Plaintiff occasionally presented with insight and judgement limits, her insight and judgment were often described as good. (*Id*.) Substantial evidence supports that explanation—the record reflects that Plaintiff's insight and judgment were, at times, described as good, adequate, or intact. (*See*, *e.g.,* R. at 847, 1654-55, 1668-69.) In addition, the ALJ noted that Plaintiff generally had intact recent and remote memory, a normal fund of knowledge, and focused concentration. (R. at 1056.) Again, the record substantially supports that explanation—at times, Plaintiff's attention or concentration was described as focused or adequate. (*See*, *e.g.*, R. at 832, 1581, 1644, 1649, 1654, 1669.) Plaintiff was sometimes found to have adequate or intact memory. (*See*, *e.g.*, R. at 832, 847, 1581, 1654, 1668.) And sometimes she was found to have an adequate fund of knowledge or that her fund of knowledge was within normal limits. (*See*, *e.g.*, R. at 833, 1654-55.) Further, the ALJ explained that despite occasionally presenting with circumstantial thought processes, Plaintiff presented with normal associations and no abnormal or psychotic thoughts. (R. at 1056.) Again, the record documents examinations finding that Plaintiff had normal associations and coherent thought

processes with no delusions, hallucinations, or abnormal or psychotic thoughts. (R. at 832-33, 847, 1581,1652, 1655, 1669.)

The ALJ then discussed why Mr. Amos' opined limits were unsupported by, and inconsistent with, Plaintiff's activities of daily living. (R. at 1056.) The ALJ noted that Plaintiff's activities included advocating for her developmentally disabled children, coaching teams, caring for ailing grandparents, and attending to chores. (*Id.*) Substantial evidence supports that explanation. The record reflects that Plaintiff lived with and cared for her two special needs children and reportedly helped take care of her grandmother. (R. at 307, 354, 748.)  The record further reflects that Plaintiff was reportedly able to perform chores such as laundry, dishes, sweeping, mopping, cleaning the bathroom, and mowing grass. (R. at 309.)

Again, Plaintiff urges that the ALJ discounted Mr. Amos' opinions solely because she "generally presented with adequate mental health functioning." (Pl's SOE 5, ECF No. 7.) But contrary to that claim, the ALJ discounted Mr. Amos' different opinions for a number of record-based reasons, including, but not limited to, examinations finding that she presented with generally adequate mental health functioning. Plaintiff does not address these other record-based reasons.

Instead, Plaintiff simply urges, that by finding that she presented with generally adequate mental health functioning, the ALJ "erred in evaluating medical evidence." And although generally presenting with adequate mental health functioning was one of the ALJ's stated reasons for discounting Mr. Amos' opinions, Plaintiff does not demonstrate that this reason lacked record support, or that the ALJ inaccurately described record evidence when reaching that conclusion. To be sure, Plaintiff points to other findings in the record that might have supported Mr. Amos' opinions. (Pl.'s Statement of Errors 6–8, ECF No. 7.) But so long as substantial

evidence supports the ALJ's findings, this Court must "defer[] to those findings 'even if there is

substantial evidence in the record that would have supported an opposite conclusion.'" *Blakely v.*

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009). Such is the case here.

In short, the undersigned concludes that the ALJ did not reversibly err when assessing

Mr. Amos' opinions. The ALJ provided several record-based reasons for finding that Mr. Amos'

opined limits were only partly persuasive. Plaintiff's assertion to the contrary lacks merit.

> 3. **Opinions From Plaintiff's Treating Psychiatrist, Dr. Chan**

Likewise, Plaintiff asserts that the ALJ discounted her treating psychiatrist's opinions

because she "generally presented with adequate mental health functioning," but that the record so

belies that stated reason that the ALJ erred when evaluating the medical record. (Pl.'s Statement

of Errors 5–8, ECF No. 7.) This assertion also lacks merit.

Here again, the ALJ described Dr. Chan's opinions and provided different reasons for

discrediting them. (R. at 1055–56.) The ALJ began by assessing Dr. Chan's October and

December 2018 opinions, writing as follows:

> Dr. Chan completed forms in October and December 2018 that indicate limitations
> in concentration, focus, insight, judgment, adaption, and social interaction, but the
> opinion does not reflect the extent of those limitations or place them in vocationally
> relevant terms for purposes of formulating a residual functional capacity (Exhibits
> 11F and 13F).

(R. at 1056.) As this discussion demonstrates, the ALJ discounted Dr. Chan's opinions because

they did not include functional limitations and were not stated in vocationally relevant terms.

(*Id.*) Substantial evidence supports that explanation—both opinions lacked such functional

limits. (R. at 687-89, 697-99.) That was a proper consideration. *Smith,* 2023 WL 2973064, at

*13; *Lyons*, 2022 WL 1064070, at *7.

The ALJ also assessed Dr. Chan's September 2018 opinion, writing as follows:

> In September 2018, Dr. Chan completed a form where he opined the claimant was able to remember work locations and procedures, carry out instructions, sustain an ordinary routine, and perform activities within a schedule, but he stated she was not able to interact with the general public or maintain attention or concentration (Exhibit 20F/1). He declined to release the claimant for employment or training despite noting limitations that the undersigned has accommodated in the residual functional capacity, and his reason for doing so was not explained and was not consistent with the abilities that were noted in that form (Exhibit 20F/1).

(R. at 1056.) As this discussion demonstrates, the ALJ accurately explained that Dr. Chan did not explain why he declined to release Plaintiff for employment or training. (R. at 952.) That too was an appropriate consideration. *Smith,* 2023 WL 2973064, at *13; *Lyons*, 2022 WL 1064070, at *7.

The ALJ further explained that Dr. Chan's opinions had some internal inconsistencies. (R. at 1056.) Substantial evidence supports that explanation because even though Dr. Chan indicated that Plaintiff could perform a number of work-like functions, Dr. Chan nevertheless indicated that she could not work or participate in job training. (R. at 952.)

The ALJ finally explained that in addition to those minor internal inconsistencies, Dr. Chan's preclusive limits were not supported by, or consistent with, mental status examination findings and Plaintiff's activities of daily living. (R. at 1056.) The ALJ wrote as follows:

> In addition to having some slight internal inconsistencies, the record does not support work-preclusive mental impairments as suggested by Dr. Chan's opinion (Exhibits 1F-31F). Though the claimant often reports significant subjective complaints, she generally presents with adequate mental functioning despite some mood and affect abnormalities that are not consistent with the limitations opined by Dr. Chan (e.g. Exhibits 1F, 18F, and 28F). She occasionally demonstrated some insight and judgment limitations, though it was often described as "good," and was generally noted to have intact recent and remote memory, normal fund of knowledge, focused concentration, and normal associations with no abnormal or psychotic thoughts, though she did have some circumstantial thought processes on occasion (e.g. Exhibits 1F, 18F, and 28F). Activities of daily living, such as advocating for her developmentally disabled children, coaching teams, caring for ailing grandparents, and attending to chores, also demonstrates significantly better functioning than opined (Exhibits 1F-31F). Thus, while the record supports some mental restrictions, the record is not consistent with limitations as extensive as those opined by Dr. Chan. Accordingly, the undersigned only finds the opinions of Dr. Chan somewhat persuasive.

(R. at 1056–57.) Substantial evidence supports these two stated explanations.

The ALJ first discussed why Dr. Chan's limits were unsupported by and inconsistent with Plaintiff's mental health status examinations. (*Id*.) The ALJ noted that despite subjective complaints and some mood and affect abnormalities, Plaintiff generally presented with adequate mental functioning that was inconsistent with the limits opined by Mr. Amos. (*Id*.) The ALJ correctly noted, for example, that even though Plaintiff occasionally presented with insight and judgment limits, her insight and judgment were often described as good. (*See e.g.,* R. at 832, 847, 1654-55, 1668-69.) The ALJ also accurately noted that Plaintiff generally had intact recent and remote memory, a normal fund of knowledge, and focused concentration. (*See e.g.*, R. at 832, 847, 1581, 1654-55, 1668-69.)  In addition, the ALJ correctly explained that despite occasionally presenting with circumstantial thought processes, Plaintiff presented with normal associations and no abnormal or psychotic thoughts. (*See e.g*., R. at 832, 847, 1581, 1654-55, 1668-69.)

The ALJ then discussed why Dr. Chan's opined limits were unsupported by, and inconsistent with, Plaintiff's activities of daily living. (R. at 1056.) The ALJ correctly noted that Plaintiff's activities included advocating for her developmentally disabled children, coaching teams, caring for ailing grandparents, and attending to chores. (R. at 307, 354, 748.)

As was the case with Mr. Amos, Plaintiff urges that the ALJ discounted Dr. Chan's opinions solely because she "generally presented with adequate mental health functioning." (Pl's SOE 5, ECF No. 7.) But again, the ALJ discounted Dr. Chan's opinions for different record-based reasons, including, but not limited to, examinations finding that she presented with generally adequate mental health functioning. Plaintiff does not address these other record-based reasons. Moreover, Plaintiff does not show a lack of evidentiary support for the ALJ's determination that she generally presented with adequate mental health functioning. Instead, she

16

points to other evidence that could have supported a contrary conclusion. (Pl.'s Statement of Errors 6–8, ECF No. 7.) That is not sufficient. *Blakely,* 581 F.3d at 406 (explaining that an ALJ's determination should be upheld if it is supported by substantial evidence even if the record contains evidence that could support a different result).

In short, the undersigned concludes that the ALJ did not reversibly err when assessing Dr. Chan's opined limits. The ALJ provided several record-based reasons for finding that they were only partly persuasive. Accordingly, this contention of error lacks merit.

### 4. Findings From State Agency Reviewer, Dr. Hill

Plaintiff cursorily asserts that the ALJ also erred by "substituting his interpretation of the medical evidence" for that of state agency reviewer Dr. Hill. (Pl.'s Statement of Errors 9, ECF No. 7.) [7] Specifically, Plaintiff asserts that the ALJ modified Dr. Hill's social interaction limitation. Plaintiff's assertions lack merit.

At the initial level, Dr. Hill reviewed Plaintiff's file and found that Plaintiff had marked limitations in interacting with others. (R. at 91.) Dr. Hill further found that Plaintiff would not be able to work collaboratively with others, and therefore, should not have customer service duties, and that her interactions with others needed to be superficial. (R. at 94.) On reconsideration, state agency reviewer, Dr. Katz found that Plaintiff had only moderate limits in interacting with others, but nevertheless, found that Plaintiff had the same functional limits found by Dr. Hill. (R. at 125, 127–29.)

The ALJ determined that the findings of Drs. Hill and Katz were somewhat persuasive. (R. at 1055.) Relevant here, the ALJ began by accurately summarizing both reviewers' social

---

[7] Although the Court typically does not address issues raised in a perfunctory fashion, the Commissioner has vigorously addressed this claim. (Df.'s Memo. in Opp., 2–7, ECF No. 8.)

interaction findings, writing: "[Drs. Hill and Katz] opined that claimant was not able to work collaboratively with others and should not have customer service duties . . . . Drs. Hill and Katz opined that claimant's interaction with others would need to be on a superficial level. . . . ." (R. at 1054.) The ALJ then assessed those findings as follows:

> While the undersigned finds that "moderate" is a more appropriate description of the claimant's social limitations, as suggested by Dr. Katz, the functional limitations indicated by Drs. Hill and Katz are mostly consistent with and supported by the totality of the evidence in the record . . . . However, the undersigned notes that the opinions of Drs. Hill and Katz use language that is vague and not vocationally defined, such as "superficial" contact (Exhibits 1A, 2A, 5A, and 6A). While the claimant's activities of daily living, such as advocating for her children and coaching their teams, demonstrates an ability to interact beyond superficially, the undersigned has included additional social restrictions to ensure work interactions would be superficial in order to give the claimant the full benefit of the doubt with respect to her subjective complaints.

(R. at 1055.) As this discussion demonstrates, the ALJ found Dr. Hill's and Dr. Katz's opinions to be mostly consistent with and supported by the record. (*Id*.) The ALJ indicated that he believed Dr. Katz' finding of a moderate limit in social interactions was more appropriate than Dr. Hill's finding of a marked limit. (*Id*.) The ALJ further indicated that he viewed both reviewers' use of the term "superficial interactions" with some skepticism, but in any event, Plaintiff's activities of daily living demonstrated that she could interact with others on a more than superficial basis. (*Id*.)

Nevertheless, and as the ALJ explained, the social interaction limits that the ALJ ultimately incorporated into Plaintiff's RFC were either consistent with, or more restrictive than, the social interaction limits opined by Dr. Hill (and Dr. Katz). Both reviewers found that Plaintiff was limited to superficial interactions with others. The ALJ went further and determined that she was limited to occasional, superficial contact with supervisors and coworkers and no interactions of any kind with the public. (R. at 1040.) Similarly, both reviewers found that Plaintiff's inability

to work collaboratively prevented her from customer service work. Again, the ALJ went further and determined that she was limited to no interactions with the public, and no jobs of any kind involving teamwork or tandem tasks. (*Id.*) Accordingly, Plaintiff cannot show that the ALJ erred when assessing Dr. Hill's findings and concluding that she had moderate, as opposed to marked, social interaction limits. *See Kristin H. v. Comm'r of Soc. Sec.*, No. 2:22-CV-03869, 2024 WL 1340271, at *3 (S.D. Ohio Mar. 29, 2024) (explaining that plaintiff's argument was undermined because an "ALJ departed from the state agency reviewers' opinions in [the] Plaintiff's favor"); *Holland v. Comm'r of Soc. Sec.*, No. 2:21-cv-10364, 2022 WL 3702919, at *8 (E.D. Mich. Aug. 10, 2022) (citing *Mosed v. Comm'r of Soc. Sec.*, No. 2:14-cv-14357, 2016 WL 6211288, at *7 (E.D. Mich. Jan. 22, 2016), *adopted and aff'd,* 2016 WL 1084679 (E.D. Mich. Mar. 21, 2016) ("Plaintiff's argument that the ALJ erred in assessing a *more restrictive* RFC than that opined by the State Agency consultants is curious and unavailing.") (add'l citation omitted)); *Putnam*, 2021 WL 2700330, at *5 (same).

For these reasons, the undersigned concludes that the ALJ did not commit reversible error when assessing Dr. Hill's findings. This contention of error therefore likewise lacks merit.

**B.      The ALJ's Subjective Symptom Assessment**

Finally, Plaintiff asserts that her subjective statements about the severity of her symptoms were consistent with the preclusive limits opined by her mental health treatment providers, and thus, the ALJ erred when conducting a subjective symptom assessment. (Pl.'s Statement of Errors 6–8, ECF No. 7.) This assertion lacks merit.

When a claimant alleges symptoms of disabling severity, an ALJ must follow a two-step process for evaluating those symptoms. *See* 20 C.F.R. §§ 404.1529; 416.929(c)(1); SSR 16–3p, 2017 WL 5180304, at*10 (Oct. 25, 2017). First, the ALJ must determine if there is an underlying medically determinable physical or mental impairment that could reasonably be expected to

produce a claimant's symptoms. Second, the ALJ "must . . . evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [those] symptoms limit [the claimant's] capacity for work." 20 C.F.R. §§ 404.1529(c)(1); 416.929(c)(1).

To evaluate the "intensity, persistence, and limiting effects of an individual's symptoms," the ALJ must consider all available evidence from medical and nonmedical sources including medical opinions. *Id.* In addition, there are seven factors set forth in SSR 16–3p[8] that an ALJ will consider: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 8) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16–3p, 2017 WL 5180304 at *7–8; *see also* 20 C.F.R. § 404.1529(c)(3)(i)–(vii). Although an ALJ is not required to analyze all seven factors he should show that he considered

---

[8] SSR 96-7p, 1996 WL 374186 (July 2, 1996) which has been superseded by SSR 16-3p, required an ALJ to evaluate the overall credibility of a plaintiff's statements. In contrast, SSR 16-3p requires an ALJ to evaluate the *consistency* of a plaintiff's statements, without reaching the question of overall *credibility*, or character for truthfulness. 2017 WL 5180304, at * 11 ("In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person."). The Sixth Circuit Court of Appeals has characterized SSR 16-3p as merely eliminating "the use of the word credibility . . . to clarify that the subjective symptoms evaluation is not an examination of an individual's character." *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016). Therefore, the credibility determination and subjective symptom analysis are not materially different, and case law regarding the former applies with equal force to the latter.

the relevant evidence. *Roach v. Comm'r Soc. Sec.*, No. 1:20-CV-01853-JDG, 2021 WL 4553128, at \*10–11 (N.D. Ohio Oct. 5, 2021).

An ALJ's assessment will not be disturbed "absent compelling reason", *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001), and such a determination is "virtually unchallengeable", *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (internal quotation omitted). Accordingly, a reviewing Court is limited to determining whether the ALJ's reasons are supported by substantial evidence. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713-14 (6th Cir. 2012) ("As long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess[.]."). Nevertheless, an ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16–3p, 2017 WL 5180304 at \*10.

The undersigned finds no error with the ALJ's subjective symptom assessment. The ALJ began by summarizing, in detail, Plaintiff's statements about the disabling effects of her mental health symptoms, including statements she made in her DIB and SSI applications and at the 2019 and 2022 hearings. (R. at 1040–41.) [9] The ALJ then indicated that although the record "reflects a history of mental impairments" the record evidence was "not consistent with symptoms quite as severe as alleged." (*Id*. at 1046.) In reaching this conclusion, the ALJ discussed Plaintiff's mental

---

[9] Plaintiff asserts that although she challenges the ALJ's assessment of the severity of her mental health symptoms, the Commissioner mostly addresses her physical pain complaints. (Pl.'s Statement of Errors 3–4, ECF No. 9.) The undersigned finds, however, that the Commissioner sufficiently discussed both Plaintiff's physical symptoms (Def.'s Memo. in Opp., 18–19, ECF No. 10) and her mental health symptoms (*Id*. at 19–20).

health treatment records during the relevant period. (*Id.* at 1046–1052.) That discussion included many details, including, but not limited to, all of the following.

In 2017, Plaintiff endorsed a myriad of symptoms including being overwhelmed, depressed, anxious, and having had remote suicidal ideations. (*Id.* at 1046 (citing to R. at 354.).) But no concerns with self-care, cognitive function, or impulse control were noted. (*Id.* (citing to R. at 355.).) Plaintiff was also reportedly able to function and do her job despite struggling with bullying and drama at work. (*Id.*) Plaintiff's mental status examination was relatively normal. (*Id.* (citing to R. at 365-55.).)

In April 2018, Plaintiff reported to her therapist that she worked on weekends from 7 a.m. to 11 p.m. (*Id.* at 1048 (citing to R. at 679.).) In July 2018, Plaintiff reported being sad but that she was better able to handle sad and nervous feelings. (*Id.* (citing to R. at 386.).) At that time, she also reported that she had made some friends, experienced improved sleep, and that her medications helped with her anxiety. (*Id.*) No significant abnormalities were reported on her mental status examination. (*Id.* (citing to R. at 387.).) In August 2018, some insight and judgement limits and circumstantial thought processes were noted, but Plaintiff continued to have intact recent and remote memory; normal fund of knowledge; focused concentration; and normal associations with no abnormal or psychotic thoughts. (*Id.* (citing to R. at 381-82.).) Although Plaintiff was admitted for emergency care in November 2018 after she made suicidal statements to a Social Security employee, she denied any intent and was discharged after less than 24 hours. (*Id.* at 1048–49 (citing to R. at 746.).) At discharge, her mental status examination was relatively normal—Plaintiff was cooperative; her mood and affect were appropriate; her recent and remote memory were intact; her thought content was unremarkable with no delusions or hallucinations; and her insight and judgment were good. (*Id.* at 1049 (citing to R. at 847.).)

In May 2019, Plaintiff was tearful when describing a number of situational stressors, including caring for her elderly grandmother who recently suffered a stroke and had been diagnosed with cancer, and her children's truancy. (*Id*. (citing to R. at 831.).) Plaintiff presented as depressed, anxious, and dramatic, but her mental status examination was within normal limits—she had appropriate dress and grooming; normal speech; coherent thought processes and content; normal associations; intact recent and remote memory; intact language; good insight and judgment; focused attention and concentration; and a normal fund of knowledge. (*Id*. (citing to R. at 832-33.).) In July 2019, some abnormalities were noted, but a mental status examination nevertheless found that Plaintiff had normal associations; intact recent and remote memory; good insight and judgment; intact language; normal fund of knowledge; and focused attention and concentration. (*Id*. (citing to R. at 1643-44.).) In August 2019, some abnormalities were noted but Plaintiff had adequate functioning with respect to memory, insight, judgment, language, attention, concentration, and fund of knowledge. (*Id*. at 1050–51 (citing to R. at 1654-55.).)

In July 2020, Plaintiff complained of anxiety, depression, racing thoughts, and flashbacks to childhood abuse, and she was easily distracted and impulsive, but she had no suicidal or homicidal ideations, no hallucinations, her recent and remote memory were intact, and she had fair insight and judgment. (*Id*. at 1051 (citing to R. at 1662.).) In October 2020, Plaintiff reportedly managed her anxiety with over-the-counter allergy Benadryl and did not want to pursue other pharmacological options. (*Id*. (citing to R. at 1766-67.).)

In February 2021, Plaintiff reported that she was homeless and staying at a hotel. (*Id*. (citing to R. at 1667.).) Her appearance was disheveled, and her mood and affect were depressed, anxious, incongruent, and tearful. (*Id*. (citing to R. at 1668-69.).) She was also verbose. (*Id*.) But Plaintiff had coherent thought processes. (*Id*.) Additionally, she had intact recent and remote

memory; normal associations; good insight and judgment; intact language; focused attention and concentration; and a normal fund of knowledge. (*Id*.) At an April 2021 appointment, except for her mood, Plaintiff's mental status was unremarkable. (*Id*. (citing to R. at 1589-91.).) Plaintiff did, however, become tearful when her counselor discussed weaning her of Xanax because she was taking medical marijuana. (*Id*.) In June 2021, Plaintiff did not have her medications because she had to reschedule a missed appointment. (*Id*. (citing to R. at 1595.).) Despite reporting high levels of depression, anxiety, and related symptoms, she had relatively good functioning on examination. (*Id*. at 1051–52 (citing to R. at 1596-97.).) In August 2021, it was noted that Seroquel seemed to help with Plaintiff's depression. (*Id*. at 1052 (citing to R. at 1601.).)

In March 2022, Plaintiff's mood was depressed and anxious. (*Id*. (citing to R. at 1581.).) That said, Plaintiff continued to have relatively good mental functioning—she had normal speech; coherent thought processes; no abnormal or psychotic thoughts or perceptions; focused attention and concentration; intact associations, language, and recent and remote memory; normal fund of knowledge; and good insight and judgment. (*Id*.)

The ALJ also noted that in June 2022, Plaintiff's counselor completed a form indicating that she experienced a variety of symptoms. (*Id*. (citing to R. at 1826.).) But the ALJ explained that the "relatively good mental functioning reflected in Plaintiff's other treatment notes does not support symptoms as severe as alleged." (*Id*.) The ALJ then explained that "[i]n general mental status examinations consistently reflect adequate functioning with respect to associations, recent memory, remote memory, fund of knowledge, attention, concentration, insight, and judgment." (*Id*.)

The ALJ additionally wrote that Plaintiff's activities of daily living indicated that her mental functioning was significantly better than alleged. (*Id*.) The ALJ then discussed those

activities in detail, noting that they included such things as making sure her boyfriend took his medications; caring for her two special needs children and advocating for their accommodations; coaching soccer; caring for her elderly grandmother; working on weekends from 7am to 11pm in April 2018; preparing simple meals; performing chores and mowing the grass; driving; shopping once a month for two hours; and working as a job coach for developmentally disabled adults in December 2020. (R. at 1053–54.)

Plaintiff does not challenge the evidence cited by the ALJ, Instead, Plaintiff points to evidence of abnormal clinical findings. (Pl's SOE 7–8, ECF No. 7.) But it is the ALJ's task to weigh competing information. And if the record supports the ALJ's conclusion, it will not be disturbed even if the record could support a different conclusion. *Blakley*, 581 F.3d at 406. Plaintiff also asserts that the ALJ erred by equating her ability to participate in some activities, such as caring for her grandmother, with an ability to sustain competitive employment. (Pl's SOE 9, ECF No. 7.) Although there is a distinction between routine personal care and full-time work, daily activities are a factor that an ALJ can consider. SSR 16–3p, 2017 WL 5180304 at *7–8. Here too, some of the activities that the ALJ discussed—such as working in 2018 and 2020, albeit part-time—involved more than minimal daily functions.

The undersigned, therefore, concludes that the ALJ did not reversibly err when conducting a subjective symptom assessment. The ALJ conducted a thorough review of the medical record in this case, and provided substantial support for his determination that Plaintiff's symptoms were not as disabling as she described. Plaintiff's final contention of error therefore lacks merit.

## V.   CONCLUSION and RECOMMENDED DISPOSITION

Plaintiff's objection to Defendant's Memorandum because it violates Local Rule 7.2(a)(3) is **DENIED**. In addition, for all of the foregoing reasons, it is **RECOMMENDED** that

the Court **AFFIRM** the Commissioner's non-disability determination and **OVERRULE** Plaintiff's Statement of Specific Errors. (ECF No. 7.)

## VI. PROCEDURE ON OBJECTIONS

If any party objects to this R&R, that party may, within fourteen (14) days of the date of this R&R, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the R&R or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the R&R will result in a waiver of the right to have the District Judge review the R&R *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the R&R. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE